United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BHS LAW LLP,

        Plaintiff,

    v.

BMO BANK N.A.,

        Defendant.

Case No. 25-cv-10368-NC

**ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION; DENYING PLAINTIFF'S MOTION FOR PROTECTIVE ORDER UNDER RULE 23(D); GRANTING IN PART AND DENYING IN PART PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE**

Re: ECF 16, 17, 20

This class action case against Defendant BMO Bank N.A. brought by Plaintiff BHS Law LLP arises from BMO's allegedly "systematic practice of charging unauthorized fees for business banking services that customers never requested, never used, never consented to, and often expressly declined." ECF 4 ¶ 2. Defendant, pointing to the arbitration provision in its Account Agreement, moves the Court to compel this case to arbitration, stay all further proceedings until arbitration is completed, and dismiss all class claims. ECF 17. Plaintiff moves the Court to issue an order under Federal Rule of Civil Procedure 23(d) preserving status quo, primarily requesting that the Court prevent the issuance and enforcement of any Account Agreements terms that were or would be implemented after Plaintiff's initial dispute with Defendant on November 6, 2025, and that would affect a

putative class member's rights.  ECF 16.  Plaintiff also requests judicial notice of three exhibits to support its arguments.  ECF 20.

The Court GRANTS Defendant's motion to compel arbitration, stay further proceedings until arbitration is completed, and dismiss all class claims because it finds that there is a mutually-assented-to Account Agreement with an arbitration provision and class waiver.  The Court DENIES Plaintiff's motion for a protective order under Rule 23(d) because it is rendered moot by the Court dismissing Plaintiff's class claims.  The Court also GRANTS IN PART and DENIES IN PART Plaintiff's request for judicial notice.

## I.    BACKGROUND

### A.    Factual Background

The parties do not dispute the following facts.

Defendant BMO Bank N.A. is a national banking association headquartered in Illinois.  ECF 4 ¶ 17.  Defendant acquired Bank of the West (BOTW) in 2022.  ECF 17 at 5; ECF 19 at 2.  As part of that acquisition, BOTW customers were converted over to Defendant's systems in September 2023.  ECF 17 at 5; ECF 19 at 2.

Plaintiff BHS Law LLP opened a small business deposit account with BOTW in May of 2019.  ECF 17 at 6; ECF 19 at 2.  As part of the account opening process, Plaintiff's two partners, Brian H. Song (who is counsel for Plaintiff) and Youn S. Lee, signed a signature card.  ECF 17-1, Ex. 1; ECF 17 at 6; ECF 19 at 2.

The Signature Card itself does not mention arbitration.  Ex. 1.  However, it states the signees:

> acknowledge and agree that the deposit account(s) is/are subject to and governed by applicable law and the terms, conditions, rates, and charges provided in the Deposit Account Disclosure For Business, Schedule of Fees and Charges for Business Deposit Accounts, and such other applicable documents and agreements pertaining to the deposit account(s) (collectively, "Disclosures"), as such Disclosures are added to, deleted from, or otherwise amended from time to time in accordance

United States District Court
Northern District of California

with such Disclosures, and acknowledge receipt of such Disclosures[.] Ex. 1 at 2.

Song is "unsure if he ever received a physical copy of the Disclosures at the time of the opening of the account." ECF 19 at 2. Further, Song "has no recollection of ever being given explanation over, being directed at, being asked to read, acknowledge, or consent to, acknowledging, reading, understanding, becoming even aware, conscious, or mindful, or even being cautioned about any arbitration provisions at the time of the opening of the account." *Id.*

The Disclosures include the Account Agreement, as the Account Agreement governs deposit accounts. ECF 17-1 (Schack Decl.) ¶ 13. The Account Agreement is updated periodically. *Id.* Generally, "notices about updates to the Account Agreement were made available on the BMO website and more significant changes were also flagged at the top of customer account statements." ECF 17 at 7. The Account Agreement can only be accessed by scrolling to the bottom of Defendant's landing page, clicking on a faint grey "Legal" button, and locating the hyperlinked handbook. ECF 19 at 3. There were no pop-ups or notifying emails or texts that alerted Plaintiff to review the Account Agreement changes. ECF 19-1 (Song Decl.) ¶ 6; ECF 16 at 8.

The Court outlines the timeline of the updated Account Agreements and their notices below:

The December 1, 2018, Account Agreement was in effect at the time Plaintiff's partners executed the Signature Card in May 2019. Schack Decl. ¶ 16, Ex. 2.

Defendant updated the Account Agreement on February 2, 2023, which is after Defendant's acquisition of BOTW, but prior to conversion to Defendant's systems. Schack Decl. ¶ 18, Ex. 3.

Defendant sent a form letter dated July 4, 2023, along with a Transition Guide, to business banking customers like Plaintiff. Schack Decl. ¶ 20, Ex. 4. The letter and guide explained that customers would be subject to an updated Account Agreement. *Id.* Defendant also enclosed a copy of the September 5, 2023, Account Agreement. *Id.* ¶ 20,

Ex. 5. Defendant has records that it sent Plaintiff a personalized copy of the letter and its enclosures at its address on record, which is the same address currently reflected for Plaintiff. *Id.* ¶ 22.

Defendant updated the Account Agreement on February 1, 2024. *Id.* ¶ 24, Ex. 6. Defendant flagged the changes encompassed in this update, noted that Plaintiff could opt out of the changes, and directed Plaintiff to the URL where the new agreement and its changes resided in Plaintiff's account statement dated December 1, 2023, through December 31, 2023. *Id.* ¶ 25, Ex. 7.

Defendant updated the Account Agreement on March 20, 2025. *Id*. ¶ 26, Ex. 8.

Defendant updated the Account Agreement on June 30, 2025. *Id.* ¶ 27, Ex. 9.

On November 28, 2025, Defendant issued a notice to its customers on its website that the Account Agreement would be updated on February 9, 2026, as to its non-BMO ATM fees and as to overdraft fees. *Id*. ¶ 34, Ex. 10. The notice attached the June 30, 2025, Account Agreement (Ex. 9). This update occurred after Defendant became aware of Plaintiff disputing Defendant's alleged fees on November 6, 2025. ECF 16 at 7.

All the alleged versions of the Account Agreements include an arbitration provision and class action waiver. Schack Decl. ¶ 15. Each arbitration provision also stated that by continuing to maintain the Account, Plaintiff agreed to the terms of the Account Agreement. *Id.* ¶ 35. Plaintiff's account has been continuously maintained with Defendant, or its predecessor BOTW, since opening in 2019. *Id.*

Some versions of the Account Agreement contain a 60-day opt-out period for the arbitration provision. *See, e.g.,* Ex. 9 at 21. Defendant maintains a list of customers who provide an opt-out letter pursuant to the opt-out procedures. Schack Decl. ¶ 33. Defendant does not have a record of Plaintiff providing an opt-out letter related to its account. *Id.*

Song sent an email to Defendant's counsel on December 12, 2025, and mailed a written notice to Defendant on December 30, 2025, both stating that Plaintiff was opting out of all arbitration provisions. ECF 19 at 4; Song Decl., Ex. 1.

4

**B.    Procedural Background**

Plaintiff brought its complaint individually and on behalf of all others similarly situated against Defendant on December 3, 2025.  ECF 1.  It filed its first amended complaint (FAC) later on the same day.  ECF 4.

Plaintiff moved the Court to issue an order under Rule 23(d) to preserve status quo.  ECF 16.  Defendant opposed.  ECF 18.  Plaintiff replied.  ECF 21.

Defendant moved the Court to compel arbitration, stay further proceedings in this matter until arbitration is completed, and dismiss all class claims.  ECF 17.  Plaintiff opposed.  ECF 19.  Plaintiff requested judicial notice of three documents to support its opposition.  ECF 20.  Defendant replied to Plaintiff's opposition and request for judicial notice.  ECF 23.

All parties have consented to magistrate judge jurisdiction.  ECF 8; ECF 14.

## II.    LEGAL STANDARD

The Federal Arbitration Act (FAA) mandates that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract or as otherwise provided."  9 U.S.C. § 2.

After it determines that the FAA applies to an agreement, a court must determine two "gateway" issues in assessing whether to compel arbitration: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute."  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citing *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)).

As such, a court must first resolve any challenge that an agreement to arbitrate was never formed.  *Caremark, LLC v. Chickasaw Nation*, 43 F.4th 1021, 1030 (9th Cir. 2022).  "Issues of contract formation may not be delegated to an arbitrator."  *Suski v. Coinbase, Inc.*, 55 F.4th 1227, 1229 (9th Cir. 2022).  Next, if there is a delegation clause, the Court must assess its enforceability.  *Caremark*, 43 F.4th at 1030.  This is because "if the parties [formed] an agreement to arbitrate containing an enforceable delegation clause, all

5

arguments going to the scope or enforceability of the arbitration provision are for the arbitrator to decide in the first instance." *Id.* at 1021.

District courts use the summary judgment standard in Federal Rule of Civil Procedure 56 when ruling on a motion to compel arbitration. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). As such, a party seeking to compel arbitration has the burden of proving that, drawing all inferences and resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any material fact. *Lopez v. Dave, Inc.*, No. 22-cv-16915, 2023 WL 8594393, at *1 (9th Cir. Dec. 12, 2023); Fed. R. Civ. P. 56(a).

## III.    DISCUSSION

### A.    Plaintiff's Request for Judicial Notice

Plaintiff requests the Court take judicial notice of three exhibits: (A) the Order Denying Defendant's Motion to Compel Arbitration in *Sanchez v. Maggy London Int'l, Ltd.,* No. 25-cv-02107-H-JLB (S.D. Cal. Nov. 6, 2025), (B) a Securities and Exchange Commission (SEC) Administrative Order in *In the Matter of BMO Cap. Mkts. Corp.*, Release No. 34-102160, and (C) an Officer of the Comptroller of Currency (OCC) news release from December 10, 2025. ECF 20. The Court grants Plaintiff's request for judicial notice of Exhibit A, but not for Exhibits B and C.

First, the Court takes judicial notice of Exhibit A, a district court decision in *Sanchez*. Courts can and have taken judicial notice of other opinions but do not take judicial notice of the facts contained in those opinions. *Harner v. USAA Gen. Indem. Co.*, No. 18-cv-01993-LL-MDD, 2022 WL 1271136, at *3 (S.D. Cal. Apr. 28, 2022) (collecting cases). The Court takes judicial notice of the existence and contents of the *Sanchez* order but notes that it is not bound by its opinion and will give it its due weight.

Second, the Court does not take judicial notice of Exhibits B and C because neither exhibit is relevant to its analysis in this case. Exhibit B is an SEC order related to BMO Capital Markets Corporation, not Defendant BMO Bank N.A. Exhibit C is an OCC news release on its investigation of large financial institutions' policies and practices. Although

United States District Court
Northern District of California

Defendant is investigated, the investigation focuses on whether its policies discriminated against customers and does not cover the alleged unauthorized deposit account charges in this case. ECF 20, Ex. C at 1.

As such, the Court grants Plaintiff's request for judicial notice of Exhibit A but denies Plaintiff's request for judicial notice of Exhibits B and C.

### B.    Plaintiff's Evidentiary Objections

Before addressing the merits of the motions, the Court first address Plaintiff's evidentiary objections to the Ben Schack Declaration (ECF 17-1), as well as Exhibits 2 through 8 attached to it. The Court overrules all of Plaintiff's objections.

When ruling on evidentiary objections at the motion to compel arbitration stage, like at the motion for summary judgment stage, courts "do not focus on the admissibility of the evidence's form" but rather "the admissibility of its contents." *Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 666 (9th Cir. 2021) (citations omitted). As another district court explained, "except in the rare instances in which the objecting party demonstrates with specificity that the subject evidence could not be produced in a proper format at trial, the court does not consider any objections on the grounds that the evidence 'constitutes hearsay or inadmissible lay opinion, or that there is a lack [of] personal knowledge.'" *Pierre v. IEC Corp.*, No. 22-cv-01280-FWS-JDE, 2023 WL 3551962, at *4 n.1 (C.D. Cal. Mar. 14, 2023) (citations omitted).

### 1.    The Court overrules Plaintiff's objections to the Schack Declaration

Plaintiff objects to the Ben Schack Declaration on the grounds of lack of personal knowledge and inadmissible hearsay, arguing that Schack failed to authenticate the legacy BOTW records or establish a trustworthy "mode of preparation" for the Signature Card as required by the business records exception. ECF 19 at 13.

Plaintiff's objections go towards form, not admissibility—they do not dispute the validity of the Declaration, specifically challenge the authenticity of the Declaration, or otherwise suggest that Defendant would not be able to present the documents in an

7

admissible form at trial.  Thus, the Court overrules Plaintiff's objections to the Schack Declaration.

### 2.    The Court overrules Plaintiff's objections to Exhibits 2 through 8 of the Schack Declaration

Plaintiff objects to Exhibits 2 through 8 of the Schack Declaration on the grounds that they are irrelevant, unfairly prejudicial, and confusing.  ECF 19 at 4.  The Court finds these arguments unpersuasive.

First, relevance objections are unnecessary at this stage because they are "duplicative" of the motion to compel standard itself.  *Sandoval,* 985 F.3d at 665 (finding the same for the summary judgment standard).  Second, Federal Rule of Evidence 403 objections regarding prejudice and confusion are also unnecessary at this stage—there is no jury to be misled or confused.  *See Sernoffsky v. Novak*, 773 F. Supp. 3d 988, 1003 (S.D. Cal. 2025) (finding the same for the summary judgment standard).  Thus, the Court overrules Plaintiff's objections to Exhibits 2 through 8 of the Schack Declaration.

### C.    Defendant's Motion to Compel Arbitration

The Court now turns to the merits of Defendant's Motion to Compel Arbitration. Defendant moves the Court to (1) compel Plaintiff to submit the claims for relief asserted against Defendant in Plaintiff's FAC to binding individual arbitration, (2) stay all further proceedings in this matter until this Motion to Compel Arbitration is decided and/or arbitration is completed, and (3) dismiss all class claims.  ECF 17 at 1.  In doing so, Defendant argues that it and Plaintiff mutually assented to an Account Agreement containing an arbitration provision and an express waiver of class relief.  *Id.*  Plaintiff contends that it never assented to an Account Agreement.  ECF 19 at 1.

The Court grants Defendant's motion to compel arbitration, stay the motion until arbitration is completed, and dismiss all class claims because it finds that: (1) the Account Agreement is subject to the FAA, (2) there is an Account Agreement with no formation issues that encompasses an arbitration provision and class action waiver, (3) there is a valid delegation clause that prevents the Court from assessing the scope and enforceability

United States District Court
Northern District of California

8

of the mutually-assented-to arbitration provision, and (4) the Court can assess the mutually assented to class waiver.

### 1.    The Account Agreement is subject to the FAA

The FAA applies to any contract affecting interstate commerce. *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001); 9 U.S.C. § 2.  Defendant argues, and Plaintiff does not dispute, that the FAA applies to the Account Agreement.   ECF 17 at 10. Indeed, all versions of the Account Agreement affect interstate commerce—it allowed BMO, a "nationally chartered bank with its headquarters in Chicago, Illinois," to do business with Plaintiff, a California law partnership.  ECF 17 at 10.  Thus, the Account Agreement is subject to the FAA.

### 2.    There is an agreement to arbitrate because there were no formation issues for the February 1, 2024, Account Agreement.

The Court first determines whether there is an agreement to arbitrate and finds that there is because Plaintiff assented to the February 1, 2024, Account Agreement and its arbitration provision.

As an initial matter, in determining whether there is an agreement to arbitrate, the Court applies California state law. *See Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014) ("State contract law controls whether the parties have agreed to arbitrate.").  Some Account Agreement versions state the "state laws of [the user's] Branch of Account" applies, which in this case, is California. *See, e.g.,* Ex. 2 at 7; Schnack Decl. ¶ 21.  While some Account Agreement versions state that "Illinois law" applies, both parties appear to agree to apply California state law. *See, e.g.,* Ex. 6 at 3; ECF 17 at 3 (applying California law); ECF 19 at 8 (applying California law). Regardless, California's and Illinois's laws are substantively similar with respect to contract formation. *Starke v. SquareTrade, Inc.*, 913 F.3d 279, 291 n.8 (2d Cir. 2019).

It is undisputed that to form a contract, "mutual assent is a required element." *Knutson*, 771 F.3d at 565.  Generally, an offeree cannot actually assent to an offer to form a contract or change terms of contract, unless he knows of the existence of the offer.

9

*Douglas v. U.S. Dist. Ct. for Cent. Dist. of Cal.*, 495 F.3d 1062, 1066 (9th Cir. 2007). "Mutual assent may be manifested by written or spoken words, or by conduct." *Binder v. Aetna Life Ins. Co.*, 75 Cal.App.4th 832, 850 (1999).

Plaintiff argues that Defendant cannot show there is mutual assent for any version of the Account Agreements and its arbitration provisions. ECF 19 at 9–10. Defendant argues that Plaintiff assented to all versions of the Account Agreement by signing a Signature Card and maintaining its account for six years. ECF 23 at 5. The Court goes through each version of the Account Agreement finds that Plaintiff assented to the December 1, 2018, Account Agreement by signing the Signature Card and the September 5, 2023, and February 1, 2024, Account Agreements by maintaining its account without opting out after receiving proper notice.

a.      **Plaintiff initially assented to the December 1, 2018, Account Agreement by signing the Signature Card**

It is undisputed that Song and Lee signed a Signature Card on behalf of Plaintiff when they opened Plaintiff's account. Ex. 1; ECF 17 at 6; ECF 19 at 2. Regardless of whether Song has "no recollection of ever begin given explanation over, being directed at, being asked to read, acknowledge, or consent to, acknowledging, reading, understanding, becoming even aware, conscious, or mindful, or even being cautioned about any arbitration provisions at the time of the opening of the account," Plaintiff can still know of the existence of the December 1, 2018, Account Agreement, the governing Account Agreement at the time. ECF 19 at 2; s*ee Safadi v. Citibank, N.A.*, No. 12-cv-1356-PSG, 2012 WL 4717875, at \*4 (N.D. Cal. Oct. 2, 2012) (rejecting the plaintiff's argument that he "had no opportunity to review the terms and conditions" contained in the agreement and was "unaware" whether the agreement was included in the given package of documents). Indeed, Plaintiff did not rebut Defendant's evidence that Song signed the Signature Card and "acknowledge[d] receipt" of the Account Agreement. *See Andre. v. U.S. Bank*, No. 20-cv-4854-CBM-PJW-X, 2021 WL 3598737, at \*2 (C.D. Cal. May 20, 2021) (finding that there was mutual assent when it was undisputed that the plaintiff

signed a signature card wherein she acknowledged receipt of the bank's terms and agreed to be bound by the terms which contained the arbitration provision).

It also did not matter that the Signature Card was "silent to the possibility of arbitration" or that the arbitration terms are hidden away.[1]  ECF 19 at 3, 8.  An offeree who knows "an offer has been made" but "does not know all of its terms" can still be held to have accepted the terms.  *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App. 3d 987, 992–93 (1972).  Plaintiff knew that a proposal had been made—it was clear that by signing the Signature Card, Plaintiff was entering a contract.  *Cf. id.* at 992 (finding that there is no assent when there are inconspicuous contractual provisions contained in a document "whose contractual nature is not obvious").  Plaintiff's failure to inform itself of the terms of the contract it entered cannot now excuse it from the commitments under that contract.

As such, Plaintiff assented to the December 1, 2018, Account Agreement when Song and Lee signed the Signature Card.

### b.    Plaintiff only assented to the updated Account Agreements it was given sufficient notice of

Defendant seems to argue that Plaintiff assented to all the updated Account Agreements by continuing to maintain its account with Defendant.  ECF 17 at 4. However, although Plaintiff's continued use of Defendant's service could be considered assent, such assent can only be inferred after Plaintiff received proper notice of the proposed changes.  *Douglas*, 495 F.3d at 1066; Ex. 6 at 15 ("If you continue to . . . keep the Account open after the effective date of any such notice [of change] you will be deemed to agree to the amendment or change.").  As such, even if there is a change-of-terms provision, Defendant must show that it provided notice of the updated agreements to

---

[1] The Court finds that Plaintiff's citations to *Sanchez v. Maggy London Int'l Ltd.*, No. 25-cv-02107-H-JLB, 2025 WL 3097931 (S.D. Cal. Nov. 6, 2025) for notice are irrelevant for the Account Agreements.  *Sanchez* only concerns formation of an "online agreement."  *Id.* at *3.  The Account Agreements are not an online agreement where Plaintiff agreed to the contract electronically.

United States District Court
Northern District of California

bind Plaintiff to them. *Stover v. Experian Holdings, Inc.*, 978 F.3d 1082, 1086 (9th Cir. 2020). The Court finds that Defendant did so for two updated Account Agreements: the September 5, 2023, Account Agreement, and February 1, 2024, Account Agreement.

First, it was sufficient notice for Defendant to mail Plaintiff a disclosure letter flagging that there was an updated Account Agreement and "a copy of the updated [September 5, 2023,] Account Agreement . . . that would apply." ECF 17 at 7; Schack Decl. ¶ 20–22. The September 5, 2023, Account Agreement also had a section explaining the changes from the previous Account Agreement. Ex. 5 at 2; Schack Decl. ¶ 20. Plaintiff did not dispute these pieces of evidence. Defendant thus provided sufficient notice to Plaintiff, as Plaintiff did not have to independently investigate to determine whether new terms were issued. *C.f. Stover*, 978 F.3d at 1086 (stating that the plaintiff had no obligation to investigate whether the defendant issued new terms without providing notice to her that it had done so). Plaintiff therefore had sufficient notice of the September 5, 2023, Account Agreement and assented to it by maintaining its account.

Second, it was sufficient notice for Defendant to flag significant changes found in the February 1, 2024, Account Agreement at the top of Plaintiff's account statement. ECF 17 at 7. The notice not only flagged significant changes to the Account Agreement but also pointed the reader to a website with the updated February 1, 2024, terms and advised the reader they could opt out of the arbitration provision. Ex. 7. Again, this notice spared Plaintiff from having to independently investigate to determine whether new terms were issued. *C.f. Stover*, 978 F.3d at 1086. Plaintiff therefore had sufficient notice of the February 1, 2024, Account Agreement and assented to it by maintaining its account.

The Court finds that Defendant did not give notice for the other updated Account Agreements. While Defendant generally alleges that "significant changes [to the agreement] were also flagged at the top of customer account statements," it only pointed to evidence that it did so for the February 1, 2024, Account Agreement. ECF 17 at 7. Further, while Defendant also generally alleges that "notices about updates to the Account Agreement were made available on the BMO website," such as the November 28, 2025,

United States District Court
Northern District of California

"notice" for the June 30, 2025, Account Agreement, it is not enough to simply make the Account Agreement and its changes online. ECF 17 at 7; Schnack Decl. ¶ 34; *Douglas*, 495 F.3d at 1066 (finding that it is not enough to have the modified contract available online because "[p]arties to a contract have no obligation to check the terms on a periodic basis to learn whether they have been changed by the other side."). Indeed, Defendant does not dispute that it did not use a "pop-up or a separate window" that alerted Plaintiff to review the changes. Song Decl. ¶ 7. Thus, because Defendant does not show that it gave Plaintiff any other notice, Plaintiff did not assent to the: February 2, 2023, Account Agreement; March 20, 2025, Account Agreement; June 30, 2025, Account Agreement; or November 28, 2025, Account Agreement.

Therefore, of the updated Account Agreements, Plaintiffs only assented to the September 5, 2023, and February 1, 2024, Account Agreements. Because Plaintiff most recently agreed to the February 1, 2024, Account Agreement, it is the governing agreement.

### c. Plaintiff's December 10, 2025, rejection email and December 30, 2025, Opt-Out Notice did not exempt him from the arbitration provision in the February 1, 2024, Account Agreement

Plaintiff argues that his December 10, 2025, email rejecting arbitration and his December 30, 2025, opt-out notice he mailed opted him out of the November 28, 2025, Account Agreement arbitration provision, and thus defeats arbitration and renders Defendant's Motion to Compel Arbitration moot. ECF 17 at 10. The Court finds this argument irrelevant because Plaintiff was not bound to the November 28, 2025, Account Agreement due to lack of notice.[2] *Supra* Section III.3.b. Plaintiff is bound to the February 1, 2024, Account Agreement. *Id.* The opt-out notice and email occurred too late

---

[2] However, even if Plaintiff's opt-out notice or rejection was valid for the November 28, 2025, Account Agreement, the opt out "has no effect on any previous, other, or future arbitration agreements" that he has with Defendant. Ex. 9 at 21. As such, because Plaintiff previously agreed to, and did not opt out of, the arbitration provision in the February 1, 2024, Account Agreement, Plaintiff is still bound to that arbitration provision.

for Plaintiff to be able to opt-out of the arbitration provision in the February 1, 2024, Account Agreement. Ex. 6 at 21 (stating that the opt-out notice must be postmarked no later than 60 days after February 1, 2024). Plaintiff did not allege he attempted to opt out at any other time.

### 3. The Court compels arbitration because the arbitration provision in the February 1, 2024, Account Agreement has a valid delegation clause

The February 1, 2024, Account Agreement's arbitration provision contains a valid delegation clause. A delegation clause "is an agreement to arbitrate threshold issues concerning the arbitration agreement." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 69–70 (2010). The arbitration provision in the February 1, 2024, Account Agreement states that "[a]ny dispute regarding the interpretation, scope, applicability or enforceability of this Arbitration Provision or any portion thereof, including whether a Claim is arbitrable, shall be decided by the arbitrator." Ex. 6 at 2. This is a valid delegation clause because it "clearly and unmistakably" "gives the arbitrator exclusive authority to decide" enforceability and scope of the arbitration provision. *Rent-A-Center,* 561 U.S. at 66. Further, because the Plaintiff only challenges the enforceability of the agreement as a whole and not the enforceability of the delegation provision itself, the enforceability of the arbitration provision remains a challenge for the arbitrator. *Id.* at 70; ECF 19 at 10 (only contending that the delegation clause cannot apply because "the underlying agreement was never legally formed.").

Because the FAA mandates "that district courts *shall* direct the parties to proceed to arbitration on issues as to which an agreement has been signed," the Court compels arbitration so that an arbitrator may decide the outlined "gateway" issues of arbitrability: interpretation, scope, applicability, and enforceability. *Dean Witter Reynolds v. Byrd,* 470 U.S. 213, 218 (1985). These gateway issues include whether public injunctive relief defeats arbitration under *McGill v. Citibank, N.A.*, 2 Cal.5th 945, 966 (2017), because *McGill* determines whether an arbitration provision is unenforceable. *Marselian v. Wells*

14

*Fargo & Co.*, 514 F. Supp. 3d 1166, 1176 (N.D. Cal. 2021) (finding that the application of the "*McGill* rule" is a gateway issue that may be delegated to the arbitrator).

Thus, the Court grants Defendant's request to compel this case to arbitration.

### 4. The Court dismisses all class claims because there is a valid class action waiver

Defendant also argues that the Court should enforce the class action waiver in the Account Agreement and dismiss the class action claims from the FAC. ECF 17 at 17. The arbitration provision in the February 1, 2024, Account Agreement state that the Court shall decide "any dispute regarding the subsection entitled 'Waiver of Class and Representative Actions and Other Non-Individualized Relief,' including any claim that all or part of [that] subsection . . . is unenforceable, illegal, void or voidable, or has been breached." Ex. 6 at 19. The "Waiver of Class and Representative Actions and Other Non-Individualized Relief" subsection states in part that the parties "AGREE THAT EACH MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR OUR INDIVIDUAL CAPACITY AND NOT AS A PLAINTIFF OR CLASS MEMBER IN ANY PURPORTED CLASS OR REPRESENTATIVE PROCEEDING." *Id.* at 20.

Because the Court has determined that the arbitration agreement exists, Plaintiff did not contest the existence or enforceability of the class action waiver, and the issue of class waiver is not delegated to an arbitrator, the Court enforces the provision according to its terms—"including terms providing for individualized proceedings." *Davtian v. Uber Techs., Inc.*, No. 24-cv-5195-CRB, 2024 WL 4681590, at *6 (N.D. Cal. Nov. 4, 2024) (citing *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 502, 509–10 (2018)).

Thus, the Court dismisses the class action claims from the FAC.

### 5. The Court stays the case pending the completion of arbitration

The FAA provides that an action shall be stayed pending completion of the arbitration. 9 U.S.C. § 3. Thus, because this case involves an arbitrable dispute, the Court grants Defendant's request to stay the proceeding.

15

**D.    Plaintiff's Motion for a Protective Order Under Rule 23(d)**

Plaintiff moves the Court to grant protective relief under Rule 23(d).  ECF 16. Specifically, it requested the Court to (1) prohibit Defendant from enforcing any revised account terms, including arbitration clauses, class-action waivers, or dispute-resolution modification issued after Plaintiff first began disputing Defendant's practices on November 6, 2025; (2) prohibit Defendant from issuing new or modified terms of service to putative class members that affect their legal rights without prior Court approval; (3) require Defendant to issue corrective notice advising customers that any such terms do not affect their rights in this lawsuit; and (4) declare any modification distributed after the filing of the complaint unenforceable as to the putative class.  *Id.* at 4.

The Court finds that Plaintiff's requested relief is moot.  Plaintiff's first request is moot because the Court ruled that Defendant's February 1, 2024, Account Agreement is the governing agreement, and not an agreement after November 6, 2025, due to lack of notice.  *Supra* Section III.C.2.b.  Plaintiff's second, third, and fourth requests are moot because the Court dismissed all class claims, and the requests are directed towards putative class members.  *Supra* Section III.C.4.

Thus, the Court denies Plaintiff's motion for a protective order under Rule 23(d).

## IV.    CONCLUSION

Accordingly, The Court GRANTS Defendant's Motion to Compel Arbitration—it compels Plaintiff to submit the claims for relief asserted against Defendant in Plaintiff's FAC to binding individual arbitration, stays all further proceedings in this matter until arbitration is completed, and dismisses all class claims.  The Case Management Conference set for March 4, 2026, is vacated.  The Court additionally ORDERS the parties to file a joint update and a motion to reopen the case within seven days after completion of arbitration.

The Court also DENIES Plaintiff's Motion for a Protective Order Under Rule 23(d). The Court also GRANTS IN PART and DENIES IN PART Plaintiff's request for judicial notice.

**IT IS SO ORDERED.**

Dated: February 11, 2026

_____
NATHANAEL M. COUSINS
United States Magistrate Judge

United States District Court
Northern District of California